# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **TAYLOR WAYNE TRAIL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18CV00037 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **UTILITY TRAILER** | ) | By: James P. Jones |
| **MANUFACTURING COMPANY,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Thomas E. Strelka, L. Leigh R. Strelka, and N. Winston West, IV,* STRELKA LAW OFFICE, P.C., *Roanoke, Virginia, for Plaintiff; Mark M. Lawson,* ELLIOTT LAWSON & MINOR, P.C., *Bristol, Virginia, for Defendant.*

In this civil case, the plaintiff, a former employee, alleges that the defendant, his former employer, violated his rights under the federal Family Medical Leave Act ("FMLA"). Because the plaintiff has failed to offer evidence showing that his children suffered from a serious health condition, he has not met his burden of establishing that he was entitled to FMLA leave. Accordingly, I will deny the plaintiff's Motion for Summary Judgment and grant the defendant's Motion for Summary Judgment.

I.

The following facts taken from the summary judgment record are undisputed except where noted.

Plaintiff Taylor Wayne Trail began working for Utility Trailer Manufacturing Company ("Utility") as a welder on August 31, 2016. He worked second shift, from 4:00 p.m. to 2:30 a.m.

Trail has two minor sons, one of whom has cerebral palsy. On March 1, 2018, Trail obtained from a human resources clerk at Utility a form to request leave under the FMLA. When he asked for the form, he told the clerk about his son's diagnosis, and she wrote a note about it. Trail gave the form to his son's doctor to be completed with supporting documentation. The completed form and accompanying documentation were never returned to Utility.

Utility has an attendance system in which employees receive a point for missing more than half a day of work and half a point for missing less than half a day of work. Company policy provides that when an employee accumulates more than 15 points in a rolling 12-month period, the employee will be terminated. Trail knew that he was approaching the 15-point limit and that several of his absences had been due to illnesses or injuries of himself or his immediate family members. His mother told him about the FMLA, which prompted him to obtain the leave request form. He was under the mistaken belief that if he was approved for FMLA leave, it would cover any medical-related absence in the future, even those unrelated to the condition he identified in his request.

Before March 8, Trail had accumulated 14.5 attendance points. On the evening of March 8, Trail's wife called Utility in an attempt to reach Trail. The couple's young children were vomiting and had rashes, and she had decided to take them to an emergency room. Mrs. Trail spoke to Pamela Greer Armstrong, a human resources clerk. There is some dispute about what Mrs. Trail told Armstrong. According to Armstrong, Mrs. Trail asked to speak to her husband, and Armstrong asked her if it was a "911 emergency." Pl.'s Br. Supp. Ex. B, Armstrong Dep. 14, ECF No. 47-2. Mrs. Trail answered in the affirmative. Armstrong transferred the call to Adam Harris, Trail's acting supervisor for the shift. Armstrong testified that she did not ask Mrs. Trail for any details about the nature of the emergency and Mrs. Trail did not provide any details. Mrs. Trail testified that she told the woman on the phone that she was taking her kids to the emergency room "because they were broke out and they were puking." *Id.* at Ex. C, Harmony Trail Dep. 8, ECF No. 47-3.

Harris testified that when he answered the phone, he offered to get Trail, but Mrs. Trail asked him to just tell Trail that she was taking their child to the hospital. Harris relayed the message to Trail, who asked if he could take FMLA leave. Harris responded that he was not sure. Harris called Armstrong and asked if Trail's FMLA request had been approved. Armstrong said she did not know and that he would have to call back in the morning to find out.

Trail told Harris that he needed to leave because his child was going to the hospital, and then he left. According to Trail, Harris told him that everything was fine and he could leave. Harris disputes this and testified in his deposition that he did not convey that Trail's absence would be excused. Trail did not personally speak with any human resources representative that evening. When Trail left work, he was unaware of the reason his child or children were being taken to the emergency room. Harris never followed up with Trail or the human resources department about Trail's absence.

The children had started feeling sick on the evening of March 7. They had begun vomiting shortly before Mrs. Trail took them to the hospital on March 8.[1] When asked why she had called her husband before taking the children to the hospital, Mrs. Trail responded, "It was just two kids, and they were both puking and feeling awful. It was a little overwhelming." *Id.* at 13.

At the hospital, the five-year-old child, J.S.T., was tested for and diagnosed with "Strep pharyngitis with scarlet fever." Pl.'s Br. Opp'n Ex. B, ECF No. 56-2. The younger child, M.T., was assessed as having "Strep tonsillitis" after having been exposed to his brother. *Id.* Ex. C, ECF No. 56-3. Both children were prescribed a

---

[1] It appears that Mrs. Trail may have taken the children to an urgent care facility rather than a hospital. She testified that she took them to Smyth County Hospital, but the relevant medical records list a site name of BHMA Urgent Care Elizabethton and also state that the children were seen at Marion First Assist. The distinction is immaterial for purposes of the present motions.

ten-day course of amoxicillin. When asked in her deposition, "What happened after you started administering the amoxicillin?" Mrs. Trail replied, "I think they got better." Harmony Trail Dep. 13, ECF No. 47-3. When asked, "How many days after?" she responded, "Probably two or three." *Id.*

The medical record from the March 8 visit states that J.S.T.'s chief complaint was a rash "starting 2 days ago." Pl.'s Suppl. Br. Ex. C at 1, ECF No. 59-3. The record states that he had no fever or vomiting and was not feeling poorly. He was in no acute distress, although both tonsils were enlarged. The doctor advised him to "[r]eturn if symptoms not improving in 5-7 days, or sooner if worsens." *Id.* at 2.

The medical facility provided a school excuse for March 7 through March 9, Wednesday through Friday. Aside from this note in the medical record, there is no indication that J.S.T. stayed home from school due to his illness. His mother testified that he had only started feeling sick the night before the March 8 visit, which would have been after the March 7 school day had ended, and he had not begun vomiting until just before the visit. J.S.T.'s vitals were recorded at approximately 5:00 p.m., suggesting that he had begun vomiting sometime in the mid- to late-afternoon on March 8.[2] The portion of M.T.'s medical record submitted to the court states that "[h]e had started having symptoms today" — March 8. *Id*. at Ex. D, ECF No. 59-4.

---

[2] This makes sense given that Trail's shift did not begin until 4:00 p.m., and the implication from Mrs. Trail's testimony is that the children did not begin vomiting until after Trail left for work.

The record further states that M.T. would be treated prophylactically because he had been exposed to his brother, who had tested positive for strep. It contains no instruction that M.T. seek any further medical attention.

The parties agree that the March 8 incident was entirely unrelated to M.T.'s cerebral palsy and Trail's earlier request for intermittent FMLA leave. Trail returned to work the next workday, Monday, March 12.[3] When he arrived, he was met by Jake Dickenson, who walked him to the cafeteria near the human resources office. Dickenson asked where Trail had gone during his last work shift, and Trail told him that Harris had assured him his absence was covered by FMLA. Trail had forgotten to bring a doctor's note with him from the visit, but he offered to go home and retrieve it. Dickenson responded that he would not need the doctor's note because the children's illnesses were short-term and was not covered by FMLA.

Dickenson then took Trail to the office of William Weaver, the human resources manager. Trail told them that his children had been diagnosed with strep and that "[t]he youngest had had an allergic reaction to the virus, and he was puking and broke out into a rash." Pl.'s Br. Supp. Ex. E, Taylor Trail Dep. 89-90, ECF No.

---

[3] Trail typically worked 10-hour shifts, Monday through Thursday, and was not scheduled to work on Friday, March 9. There is some evidence that he stopped by the facility on Friday, March 9 and asked human resources clerk Sandra Schmidt if his early departure the evening before would be covered by FMLA. Schmidt may have told Trail that the absence was not covered because strep was not an FMLA-qualifying illness and the absence was unrelated to Trail's earlier FMLA request. Trail, however, does not recall this conversation.

47-5. Weaver told Trail his absence would not be covered by FMLA and that he was terminated for excessive absenteeism. Trail had left the facility on March 8 with more than half of his shift remaining, so he had been assigned a full attendance point, causing him to exceed 15 points. The entirety of Trail's interactions that morning, from the time Trail first met Dickenson to the time he left the facility, took 20 to 30 minutes. Neither Dickenson nor Weaver asked Trail for any documentation of his sons' illnesses. Weaver contends that Trail did not mention FMLA during their meeting on March 12, although Weaver admits that he had knowledge from Trail's earlier conversations with others that Trail had hoped the absence would be covered by FMLA.

In his deposition, Weaver testified that "[i]f there is something FMLA related, we would put the brakes on [the termination], look at it, examine it, but in this case it was clear to us that it was not. It was just another absence, so we applied the [attendance] rule." *Id.* at Ex. G, Weaver Dep. 9, ECF No. 47-7. When asked if he had requested documentation regarding the hospital visit, Weaver replied,

> No, because our policy is a no excuse policy for attendance. And again, based on what he told to two HR clerks, this was not related to Family Medical Leave. So I really didn't need to see the . . . emergency room record because it's an automatic point.

*Id.* at 10. Weaver relayed to the plant manager, Jerry Sheets, that Trail had accumulated more than 15 attendance points and that his last absence was a visit to the emergency room, which was not covered by FMLA. Sheets approved Trail's

termination. The parties agree that Trail would not have been terminated had he not left work early on March 8 to meet his wife and children at the emergency room.

On this record, both parties have moved for summary judgment. The parties' motions have been fully briefed and are ripe for decision.[4]

II.

The court is required to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on cross-motions for summary judgment, the court must, "[w]ith respect to each side's motion, . . . view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Kolbe v. Hogan*, 849 F.3d 114, 130 (4th Cir. 2017). Summary judgment is not a disfavored procedural shortcut, but an important mechanism for weeding out claims and defenses that have no factual basis. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" to care for the employee's child

---

[4] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

who "has a serious health condition." 29 U.S.C. § 2612(a)(1). Under the governing regulations, as applicable to the facts of this case, the definition of a "serious health condition" includes

> [a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves . . . [t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a). "A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) . . . ." 29 C.F.R. § 825.113(c). "[A]lthough conditions like the common cold or the flu will not routinely satisfy the requirements of a 'serious health condition,' absences resulting from such illnesses are protected under FMLA when the regulatory tests are met." *Smith v. AS Am., Inc.*, 829 F.3d 616, 622 (8th Cir. 2016) (internal quotation marks and citations omitted).

The term "needed to care for a family member" includes "situations where the employee may be needed to substitute for others who normally care for the family member." 29 C.F.R. § 825.124(b). Notably, "[t]he employee need not be the only individual or family member available to care for the family member." *Id.* The regulatory definition of "needed to care for a family member" is quite broad; for instance, it "includes providing psychological comfort and reassurance" in addition to physical care. 29 C.F.R. § 825.124(a).

"When an employee seeks leave for the first time for a[n] FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.302(c). Notice need only make the employer aware that the employee may need FMLA leave. *Hannah P. v. Coats*, 916 F.3d 327, 345-46 (4th Cir. 2019). "[O]nce the employer is on notice of the employee's need to take potentially FMLA-qualifying leave, the responsibility falls on the employer to inquire further about whether the employee is seeking FMLA leave." *Id.* at 346 (internal quotation marks and citation omitted). A regulation promulgated under the FMLA states, "The employer will be expected to obtain any additional required information through informal means. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA–qualifying." 29 C.F.R. § 825.303(b). "If the employer finds the employee's request for leave vague or insufficient, the employer should ask the employee to provide the necessary details through additional documentation and information." *Krenzke v. Alexandria Motor Cars, Inc.*, 289 F. App'x 629, 632 (4th Cir. 2008) (unpublished). "The employer has the duty to elicit the details required under the FMLA." *Id.* (citing *Miller v. AT & T Corp.*, 250 F.3d 820, 835 (4th Cir. 2001)).

The FMLA makes it unlawful for any employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). FMLA discrimination and retaliation

claims are analogous to discrimination and retaliation claims brought under Title VII of the Civil Rights Act ("Title VII").  *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013).  Thus, a court will evaluate a plaintiff's FMLA retaliation claim using Title VII standards.  *See id.*

The FMLA also makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1).  To state a claim for FMLA interference, the plaintiff must show that (1) he was an eligible employee, (2) the defendant was an FMLA-defined employer, (3) he was entitled to leave under the statute, (4) he gave notice to the employer that he would take FMLA leave, and (5) the defendant denied his FMLA rights.  *Corbett v. Richmond Metro. Transp. Auth.*, 203 F. Supp. 3d 699, 709 (E.D. Va. 2016).  Interference includes refusing to authorize FMLA leave.  *Smith*, 829 F.3d at 621.

Trail has asserted claims under both a discrimination and retaliation theory (Count I) and an interference theory (Count II).  To prevail on either of these claims, Trail must establish that he was entitled to leave under the FMLA. *See, e.g., Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 568 (6th Cir. 2010).  Thus, as stated above, he must show that his leave on March 8 was necessitated by his child's or children's serious health condition.  This he has failed to do.

The applicable regulation makes clear that to qualify as a serious health condition, an illness must result in "[a] period of incapacity of more than three consecutive, full calendar days." 29 C.F.R. § 825.115(a). The record contains insufficient evidence for a factfinder to conclude that either J.S.T. or M.T. was incapacitated for more than three days. The medical record indicates that J.S.T. may have had a rash for two days before being seen by a doctor, but there is no indication that the rash was incapacitating — to the contrary, the same record states that he was not feeling poorly. According to Mrs. Trail, the children began feeling sick on the night of March 7 and began vomiting on the afternoon of March 8. The summary judgment record contains no discussion of their symptoms over the following days other than a vague statement that they "got better . . . [p]robably two or three" days after they began taking antibiotics. Harmony Trail Dep. 13, ECF No. 47-3. This is simply not enough evidence to meet the plaintiff's burden of proving that either child was incapacitated for more than three full calendar days.[5]

---

[5] After reviewing the initial summary judgment briefs and record, I gave the plaintiff an opportunity to supplement the record by submitting additional evidence relevant to the issue of the number of days either child was incapacitated, contemplating that perhaps counsel might be able to file an affidavit or declaration illuminating the matter. Order, Dec. 17, 2019, ECF No. 58. Regretfully, the plaintiff filed only the deposition of Mrs. Trail and the record of M.T.'s doctor's visit, which were already contained in the record, and two additional pages from the record of J.S.T.'s doctor's visit. None of this evidence adequately establishes the necessary period of incapacity.

The record in this case demonstrates that Utility did not comply with its duties under the FMLA. It should have requested that Trail provide documentation of his sons' illness, given him an appropriate opportunity to furnish that documentation, and requested additional information if necessary before determining whether Trail's March 8 early departure was protected by the FMLA. Its rush to terminate Trail was ill-advised. Nevertheless, to succeed on his claims, Trail bears the burden of proving that he was in fact entitled to FMLA leave. He has not met his burden. Utility is therefore entitled to judgment as a matter of law.

### III.

For the foregoing reasons, it is **ORDERED** that the plaintiff's Motion for Summary Judgment, ECF No. 46, is DENIED, and the defendant's Motion for Summary Judgment, ECF No. 49, is GRANTED. A separate final judgment will enter herewith.

ENTER: January 8, 2020

/s/ *JAMES P. JONES*
United States District Judge